1   WO

6       IN THE UNITED STATES DISTRICT COURT

7       FOR THE DISTRICT OF ARIZONA

9   Herbert and Marsha Anderson,           )   No. 08-cv-02010-PHX-ROS
                                           )
10              Plaintiffs,                 )   **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                         )
    State Farm Fire and Casualty Company,  )
13                                         )
               Defendant.                  )
14                                         )
                                           )
15

16          Before the Court is Defendant's Motion for Summary Judgment, (Doc. 10) and

17  Plaintiffs' Cross-Motion for Summary Judgment. (Doc. 14.) For the reasons set forth herein,

18  Defendant's Motion will be granted, and Plaintiffs' motion will be denied.

19                              BACKGROUND

20          In July of 2007, heavy rains fell on the mountainside north of Plaintiffs' Scottsdale

21  home. (Id. at 2). A drainage system that was supposed to divert the water failed to do so.

22  (Id. at 8.) As a result, the water continued south and entered Plaintiffs' property. (Id. at 2.)

23  The rainwater and mud it had picked up then entered the home, flooding it to a height of

24  almost two feet and doing extensive damage. (Id. at 2.) Plaintiffs had a homeowners

25  insurance policy with Defendant. (Id.) After Plaintiffs filed a claim under that policy,

26  Defendant inspected the damage and then denied the claim. (Id. at 3-4.)

27

28

1    Plaintiffs and Defendant disagree over whether the denial of the claim was proper. A

2    clause in the policy excludes from coverage any "Water Damage, meaning: flood, surface

3    water," and so on. (Doc. 10 at 3-4.) The dispositive question is whether the damage caused

4    by the rainwater that flooded Plaintiffs' home qualifies as "Water Damage" under the policy,

5    and therefore is not covered by the policy.

6                              II.  STANDARD OF REVIEW

7    A court must grant summary judgment if the pleadings and supporting documents,

8    viewed in the light most favorable to the non-moving party, "show that there is no genuine

9    issue as to any material fact and that the moving party is entitled to a judgment as a matter

10    of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

11    Substantive law determines which facts are material, and "[o]nly disputes over facts that

12    might affect the outcome of the suit under the governing law will properly preclude the entry

13    of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

14    addition, the dispute must be genuine; that is, "the evidence is such that a reasonable jury

15    could return a verdict for the nonmoving party." Id. at 248.

16    The party opposing summary judgment "may not rest upon the mere allegations or

17    denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a

18    genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith

19    Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is

20    sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or

21    is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at

22    249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the

23    evidence, and the drawing of legitimate inferences from the facts are jury functions, not those

24    of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and

25    all justifiable inferences are to be drawn in his favor" at the summary judgment stage. Id.

26    The meaning of a contract and whether that meaning is ambiguous are questions of

27    law. Burke v. Voicestream Wireless Corp., 87 P.3d 81, 83 (Ariz. Ct. App. 2004.) The terms

28    of insurance policies are given their plain and ordinary meaning, and any "actually

1   ambiguous" terms are interpreted against the insurer. <u>Cal. Cas. Ins. Co. v. Am. Family Mut.</u>

2   <u>Ins. Co.</u>, 94 P.3d 616, 618 (Ariz. Ct. App. 2004).

3                                          III. ANALYSIS

4          There is no dispute over the material facts.  Rainwater flowing across the surface of

5   the land entered Plaintiffs' property and then their home, causing extensive damage.  (Doc.

6   14 at 2.)  A drainage system intended to divert such flows of water failed to do so.  (<u>Id.</u>)

7          Plaintiffs' insurance policy contains a section on "LOSSES NOT INSURED," which

8   includes the following language:

9
          2. We do not insure under any coverage for any loss which would not have
10        occurred in the absence of one or more of the following excluded events. We
          do not insure for such loss regardless of: (a) the cause of the excluded event;
11        or (b) other causes of the loss; or (c) whether other causes acted concurrently
          or in any sequence with the excluded event to produce the loss; or (d) whether
12        the event occurs suddenly or gradually, involves isolated or widespread
          damage, arises from natural or external forces, or occurs as a result of any
13        combination of these:

14              * * *

15        c. Water Damage, meaning:
                (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow
16              of a body of water, or spray from any of these, all whether driven by
                wind or not;
17
18  (Doc. 10 at 3-4.)  Therefore, if the water that entered Plaintiffs' home was "surface water,"

19  then the policy does not cover the resulting damage.  (<u>Id.</u>)  Long-established Arizona

20  precedent holds that flows across the ground of rainwater are considered surface waters. <u>See</u>

21  <u>Gibson v. Duncan</u>, 152 P. 856, 856-57 (Ariz. 1915) ("[D]efendant . . . to keep said manure

22  and filth . . . from being washed [onto his premises] by the rain waters and waters from

23  melting snows, placed boards on edge upon his own premises, which said boards hold back

24  the surface waters upon plaintiff's premises . . ."). This is in accord with the meaning given

25  the term by courts across the country[1] and with the term's plain and ordinary meaning. The

26  _____

27      [1]<u>See</u>, <u>e.g.</u> <u>Smith v. Union Auto. Ind. Co.</u>, 752 N.E.2d 1261,1268 (Ill. App. 2001)
    (rainwater that flowed into window wells and flooded policy-holder's basement was "surface
28  water"); <u>Cameron v. USAA Prop. and Cas. Ins. Co.</u>, 733 A.2d 965, 971 (D.C. App. 1999)

                                              - 3 -

1  drainage system's failure to divert the rainwater does not alter the water's character as
2  surface water.

3      Because the policy does not cover the damage at issue in this suit, Defendant did not
4  breach the contract. Further, Defendant adequately investigated the claim and provided a
5  reasonable basis for denying Plaintiffs' claim. Thus, Defendant did not breached its duty of
6  good faith and fair dealing. Accordingly,

7      **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc.
8  10) is **GRANTED**.

9      **FURTHER ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment (Doc.
10  14) is **DENIED**.

11      **FURTHER ORDERED** that the clerk shall enter judgment accordingly.

12      DATED this 30th day of July, 2009.
13

14

15

16

17      _____
        Roslyn O. Silver
        United States District Judge

18

19

20

21

22

23

24

25

26  (pool of water formed by torrential rain and melting snow that flooded policy-holder's
27  basement was "surface water"); <u>Angott v. Great N. Ins. Co.</u>, 2006 WL 1328874, at 4 (E.D.
    Mich. 2006) (water from torrential downpour that flooded policy-holder's basement was
28  "surface water").